### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY D., | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:20-cv-00455-JDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
| *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks remand on the basis, *inter alia*, that the ALJ improperly interpreted raw medical evidence to assess his physical residual functional capacity (RFC).  *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 1, 8-9.  I agree and, on that basis, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.  I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of affective disorder, anxiety disorder,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

post-traumatic stress disorder, personality disorder, and peripheral neuropathy from diabetes mellitus, Finding 2, Record at 16; that he had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) in that he could lift and/or carry up to 25 pounds frequently and 50 pounds occasionally, stand and/or walk for six hours and sit for eight hours in an eight-hour workday, could frequently, as opposed to constantly, climb, could never be exposed to extreme cold, was able to understand, remember, and carry out simple instructions, occasionally interact with the public, and tolerate occasional changes in the routine work setting, and was unable to work at a production rate pace, such as on an assembly line, Finding 4, *id*. at 22; that, considering his age (43 years old, defined as a younger individual, on the date his application was filed, June 8, 2018), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 31-32; and that he, therefore, had not been disabled from June 8, 2018, the date he filed his application, through the date of the decision, April 15, 2020, Finding 10, *id*. at 33. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.   Discussion

In general, unless a claimant's work-related limitations are obvious to a layperson as a matter of common sense, an ALJ is not qualified to determine a claimant's RFC on the basis of the raw medical evidence but must instead look to a medical expert to do so. *See, e.g., Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record").

As relevant here, the record before the ALJ contained two expert assessments of the plaintiff's physical limitations: those of agency nonexamining consultants Donald Trumbull, M.D., dated August 16, 2018, and Archibald Green, D.O., dated February 28, 2019. *See* Record at 80-84, 89-92. As the ALJ recognized, Dr. Trumbull "opined that due to dermatitis" – the only severe physical impairment he found – the plaintiff "could lift and/or carry 25 pounds frequently and 50 pounds occasionally, stand or walk for six hours and sit more than six hours in an eight-hour workday, and should avoid concentrated exposure to extreme cold, extreme heat, wetness, fumes, odors, dust, gases, and poor ventilation." *Id.* at 30, 83-84. Dr. Trumbull found "no objective confirmation" of the plaintiff's claimed diabetes-related neuropathy. *Id.* at 84.

3

Dr. Green concluded that the plaintiff had no severe physical impairment and assessed no physical limitations. *See id*. at 90. He explained that the plaintiff's medically determinable impairments of coronary artery disease, thyroid disease, hyperlipidemia, hypertension, obesity, and psoriasis were "not shown to be limiting" and that there was "no confirmatory objective MER [medical evidence of record] in support of a limiting neuropathy and no objective MER in support of the allegation of psoriatic arthritis." *Id*.[3]

The ALJ deemed the Trumbull opinion "persuasive only in part," *id*. at 31, explaining that "[v]arious restrictions due to dermatitis" were "not supported or consistent with" Dr. Green's assessment that the plaintiff's dermatitis was nonsevere and that there was "no evidence that [the dermatitis] caused him vocational limitations," *id*. at 30. However, she explained, "some of the limitations [Dr. Trumbull] cited are consistent with the evidence as a whole pertaining to peripheral neuropathy, including the monofilament tests showing decreased sensation in the feet and physical examinations showing decreased sensation with atrophic skin changes, loss of hair on the legs, and absent ankle reflexes." *Id*. at 30-31 (citations omitted). She added that "a reduced level of climbing is consistent with the finding that the [plaintiff] is able to stand and/or walk at reduced levels of six, rather than eight, hours, and it is also common sense that an individual experiencing some numbness in the feet should not climb constantly or be exposed to extreme cold." *Id*. at 31.

The ALJ also found the Green opinion "persuasive only in part[,]" explaining that, although Dr. Green's "findings concerning the severity of the [plaintiff]'s skin condition [were] consistent with the longitudinal record showing improvement with treatment[,]" as a result of which she had

---

[3] As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 5 n.1, the record also contains a February 14, 2019, opinion of Kelleryn Wood, ANP, co-signed by Fred Fridman, D.O., assessing a number of physical restrictions, *see* Record at 29. However, the ALJ deemed that opinion "not very persuasive," *id*., and the plaintiff has not challenged that finding, *see* Statement of Errors at 7 n.4.

declined to adopt certain limitations assessed by Dr. Trumbull, "the longitudinal record does show the [plaintiff] experienced peripheral neuropathy from his diabetes, which caused him some limitation and reasonably supports the restrictions set forth in the [RFC]." *Id.* (citations omitted). In support of the proposition that neuropathy-related limitations were warranted, the ALJ cited two medical records: (i) a February 2018 report of a physical examination in which monofilament testing revealed diminished tactile sensation in both of the plaintiff's feet, *see id.* at 31, 532, and (ii) a September 2019 examination performed by Daniel Schwartz, M.D., *see id.* at 31, 1045-1051.

The plaintiff contends that "[t]he ALJ was not qualified to ascertain that limitations based on severe dermatitis adequately accounted for all the limitations due to severe diabetic neuropathy." Statement of Errors at 8. He adds that her "attempt at a common[-]sense determination" that he remained capable of "reduced" standing and/or walking requirements of six hours in an eight-hour workday likewise fails because that represents the full range, rather than a reduced range, of standing/walking for medium work and, more importantly, the record demonstrates that he was not capable of standing/walking for six hours in an eight-hour workday. *Id.* at 9.

The commissioner rejoins that the ALJ did not interpret raw medical evidence to assess functional limitations but, rather, "reasonably concluded" that evidence unseen by Dr. Trumbull, including Dr. Schwartz's findings, was "consistent with Dr. Trumbull's RFC." Opposition at 11-12. She asserts that, although "Dr. Schwartz's finding may have confirmed the presence of diabetic neuropathy, . . . that is of no consequence since Dr. Trumbull, Dr. Green, and the ALJ all found Plaintiff's diabetes was a medically determinable impairment[,]" and Dr. Schwartz assessed no functional limitations. *Id.* at 9. She reasons that, because Dr. Trumbull was required to consider all medically determinable impairments, severe or not, in assessing the plaintiff's RFC, the ALJ

supportably concluded that his limitations accounted for the plaintiff's neuropathy.  *See id.* at 6.

She likens this case to *Jeremy J. S. v. Berryhill*, No. 1:18-cv-00192-LEW, 2019 WL 2005795, at

*3 (D. Me. May 7, 2019) (rec. dec., *aff'd* June 19, 2019), in which this court held remand

unwarranted when, although agency nonexamining consultants had not seen a later neuropathy

diagnosis and a finding of diminished sensation in the claimant's hands and feet, the plaintiff had

not attempted to correlate the finding of diminished sensation with any specific functional

limitations.  *See id.* at 9-10.

The plaintiff has the better argument.

The ALJ indeed impermissibly interpreted raw medical evidence when she cited evidence

unseen by Drs. Trumbull or Green as warranting the same limitations assessed by Dr. Trumbull

for a different impairment, dermatitis.

First, while Drs. Trumbull and Green did find a medically determinable but nonsevere

impairment of diabetes mellitus, *see* Record at 82, 90, both seemingly found no medically

determinable impairment of diabetic neuropathy, *see id.* at 84 (notation by Dr. Trumbull that there

was "no objective confirmation of" diabetic neuropathy), *see id.* at 90 (notation by Dr. Green that

there was "no confirmatory objective MER [medical evidence of record] in support of a limiting

neuropathy").

Consistent with that finding, Dr. Trumbull did not indicate that he had taken neuropathy

into account in assessing the plaintiff's physical limitations, *see id.* at 83-84, nor could he have

done so, *see, e.g.*, SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) ("RFC is an administrative

assessment of the extent to which an individual's *medically determinable impairment(s)*, including

any related symptoms, such as pain, may cause physical or mental limitations[.]") (emphasis

added).  To the extent that Dr. Green's notation that he found "no confirmatory objective MER in

support of a *limiting* neuropathy" can be construed to mean that he found a medically determinable but nonsevere impairment of neuropathy, he assessed no physical limitations upon which the ALJ could have relied in accounting for that impairment.  Record at 90 (emphasis added).[4]

Second, the ALJ twice cited the report of Dr. Schwartz – unseen by Drs. Trumbull and Green – in support of her assessed RFC, *see id*. at 30-31 (citing, *inter alia*, Exhibit B15F), thereby interpreting raw medical evidence to conclude that some of Dr. Trumbull's limitations, together with an additional "common sense" limitation she assessed to only frequent, rather than constant, climbing, adequately accounted for the plaintiff's neuropathy, *see id*.

As the plaintiff argues, *see* Statement of Errors at 8-9, it is not clear as a matter of common sense that the limitations assessed by Dr. Trumbull to account for dermatitis, together with an additional climbing restriction, adequately account for neuropathy, particularly given Dr. Schwartz's findings, which arguably call into question whether the plaintiff could stand/walk for at least six hours in an eight-hour workday, *see* Record at 1045 ("Neurological examination demonstrates length-dependent, relatively symmetric loss of deep tendon reflexes and loss of sensation involving large and small-fiber sensory modalities[.]"), 1049 (physical examination revealed, *inter alia*, "edema in the distal lower extremities with trophic skin changes and loss of hair in both legs" and "absent ankle reflexes").

*Jeremy J. S*. is distinguishable in that, there, the claimant faulted the ALJ for failing to assess any limitations stemming from his nonsevere impairment of neuropathy despite acknowledging that "physical examinations had indicated some diminished sensation in his hands and feet[.]"  *Jeremy J. S.*, 2019 WL 2005795, at *3.  In that context, the court held remand

---

[4] For these reasons, the commissioner's partial reliance on the fact that both Drs. Trumbull and Green considered monofilament testing, including monofilament testing to the feet showing loss of sensation, *see* Opposition at 11, is also unavailing.

unwarranted because the claimant had not "attempt[ed] to correlate the finding of diminished sensation with any specific functional limitations." *Id.* In this case, by contrast, the ALJ concluded that neuropathy-related limitations were warranted but, in the absence of reliance on any expert opinion taking that condition into account, impermissibly assessed the raw medical evidence to devise them, contravening "the well-established precept that an ALJ is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment." *Stephen R. W. v. Saul*, No. 2:20-cv-00001-LEW, 2020 WL 7418972, at *2 (D. Me. Dec. 18, 2020) (rec. dec., *aff'd* Jan 19, 2021) (alteration, citation, and internal quotation marks omitted).[5]

This error, in turn, undermined the relevance of the VE's testimony on which the ALJ relied to meet the commissioner's Step 5 burden to prove that a person with the posited RFC could perform jobs existing in significant numbers in the national economy, warranting reversal and remand. *See* Record at 31-33; *Arocho v. Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a VE are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record). Remand, accordingly, is required.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14)*

---

[5] The commissioner does not argue, in the alternative, that if the ALJ interpreted raw medical evidence, her physical RFC finding nonetheless is defensible as a common-sense judgment. *See* Opposition at 5-13.

*days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 19th day of December, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge